IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CRAIG DWAYNE COBB      )
           )
     Plaintiff,      )
           )
     v.      )     Civil Action No. WGC-11-2921
           )
MICHAEL ASTRUE      )
Commissioner of Social Security  )
           )
     Defendant.     )
           )

**MEMORANDUM OPINION**

Plaintiff Craig Dwayne Cobb ("Mr. Cobb" or "Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his claim for Disability Insurance Benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 401-433.  The parties consented to a referral to a United States Magistrate Judge for all proceedings and final disposition.  *See* ECF Nos. 6-8.[1]  Pending and ready for resolution are Plaintiff's Motion for Summary Judgment (ECF No. 14) and Defendant's Motion for Summary Judgment (ECF No. 15).  No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2011).

1.     **Background**

On August 10, 2009 Mr. Cobb filed an application for DIB alleging a disability onset date of June 19, 2009 due to Crohn's disease, colitis and torn quadriceps tendon in left leg.  *See* R. at 109-12, 124, 127-28.  From the date of the alleged onset, Mr. Cobb remained insured

---

[1] The case was subsequently reassigned to the undersigned.

through December 31, 201**2**.[2]  *See* R. at 124, 157, 178, 296, 396.  Mr. Cobb's application was denied on January 8, 2010.  R. at 61-64.  Mr. Cobb requested reconsideration and on July 15, 2010 his application for DIB was denied again.  R. at 67-68.  Thereafter Mr. Cobb requested a hearing before an Administrative Law Judge ("ALJ").  *See* R. at 70-71.  On May 25, 2011 an ALJ convened a hearing.  Mr. Cobb was represented at the hearing.  The ALJ obtained testimony from Mr. Cobb and a vocational expert ("VE").  R. at 24-56.  In the June 13, 2011 decision the ALJ found Mr. Cobb was not under a disability, as defined in the Social Security Act, from June 19, 2009 through the date of the decision.  R. at 20.  Mr. Cobb requested a review of the hearing decision.  R. at 7-9.  On August 26, 2011 the Appeals Council denied Mr. Cobb's request for review, R. at 1-6, thus making the ALJ's determination the Commissioner's final decision.

## 2.    ALJ's Decision

In the June 13, 2011 decision, the ALJ evaluated Mr. Cobb's claim for DIB using the sequential evaluation process set forth in 20 C.F.R. § 404.1520.  Mr. Cobb bears the burden of demonstrating his disability as to the first four steps.  At step five the burden shifts to the Commissioner.  If Mr. Cobb's claim fails at any step of the process, the ALJ does not advance to the subsequent steps.  *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

The ALJ determined that Mr. Cobb meets the non-disability requirements for a period of disability and disability insurance benefits through December 31, 2013.[3]  R. at 15.  At step one the ALJ found Mr. Cobb has not engaged in substantial gainful activity since June 19, 2009, the alleged onset date.  *Id.*  The ALJ concluded at step two that Mr. Cobb has the following severe

---

[2]   In the decision the ALJ states that Mr. Cobb "has acquired sufficient quarters of coverage to remain insured through December 31, 201**3**."  R. at 13 (emphasis added).  There is one document, Certified Earnings Record, which identifies the date last insured as December 31, 2013.  *See* R. at 122.  All other records from the Social Security Administration lists December 31, 2012 as the date last insured.

[3]   As noted *supra*, this date contradicts the vast majority of evidence in the administrative record.

impairments: "status post left quadriceps tendon repair, bilateral knee pain and Crohn's disease."

*Id.*  The ALJ noted, at the hearing, Mr. Cobb's representative indicated that Mr. Cobb's panic

attacks were not severe.  "The claimant stated that he had panic attacks, but his pain medication

mitigates the attacks and he has not received any treatment from a mental health professional . . .

Consequently, I find that the panic attacks are a non-severe impairment."  *Id.*

    At step three the ALJ determined Mr. Cobb does not have an impairment or combination

of impairments which meet or medically equal one of the listed impairments described in 20

C.F.R. Part 404, Subpart A, Appendix 1.  The ALJ considered Listing 1.08, *Soft tissue injury* and

made the following determination:

> The claimant does not meet listing 1.08.  Listing 1.08 requires that
> the claimant have a soft tissue injury that is under <u>continuing
> surgical management</u> as defined in 1.00M, directed toward the
> salvage or restoration of <u>major</u> function, and such major function
> was <u>not</u> restored or expected to be restored within 12 months of
> onset.  Continuing surgical management means surgical procedures
> and associated treatments related to the efforts directed towards the
> salvage or restoration of <u>functional use</u> of the affected part.
>
> The record clearly reveals that the claimant's quadriceps tendon
> repair and knee impairment falls short of meeting listing 1.08.  The
> claimant underwent a quadriceps tendon repair on July 2, 2009.
> He suffered an infection and was admitted to the hospital on July
> 10, 2009.   Thereafter, the claimant underwent therapy and
> treatment.   From October 21 through October 26, 2009, the
> claimant was admitted and was started on Vancomycin.   By
> December 2009, the injury had improved.  The claimant was noted
> for having only mild discomfort with the knee swelling, erythema
> warmth and drainage resolved.  Furthermore, the medical records
> indicate that on 1/22/2010, the permanent sutures were removed
> from Mr. Cobb's tendon and the infection was resolved.

R. at 16 (citations omitted).

    Next the ALJ determined Mr. Cobb's residual functional capacity ("RFC").  The ALJ

found Mr. Cobb can perform light work "except the claimant needs a sit/stand option at will,

needs a cane to walk, he can never kneel or climb ladders[,] ropes or scaffolds and he must avoid hazards like machinery or heights." *Id.* At step four the ALJ found Mr. Cobb is unable to perform his past relevant work as a mechanic, which is heavy as performed, or his past relevant work as a dump truck operator and a delivery driver, which are at the medium exertional level. R. at 18.

Finally, at step five, the ALJ considered Mr. Cobb's age on the alleged disability onset date (48 years old, defined as a younger individual age 18-49), education (high school and able to communicate in English), past work experience (transferability of job skills is not material) and his RFC (light work with limitations). The ALJ found the Social Security Administration met its burden of proving Mr. Cobb was capable of performing other work[4] that exists in significant numbers in the national economy, relying on the testimony of the VE. R. at 19, 51-52. Accordingly, the ALJ concluded Mr. Cobb is not disabled within the meaning of the Act from June 19, 2009 through the date of the decision. R. at 20.

**3.     Standard of Review**

The role of this Court on review is to determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Pass v. Chater*, 65 F.3d at 1202; *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla, but less than a preponderance, of the evidence presented, *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (citations omitted), and it must be sufficient to justify a refusal to direct a verdict if the

---

[4] A cashier and an inspector. R. at 19. The VE identified three jobs: a cashier, a packer and an inspector. R. at 51-52.

case were before a jury.  *Hays*, 907 F.2d at 1456.  This Court cannot try the case *de novo* or

resolve evidentiary conflicts, but rather must affirm a decision supported by substantial evidence.

*Id.*

**4.**      **Discussion**

 *A.* *Residual Functional Capacity*

The ALJ assigned significant weight to the opinion evidence by the state experts, namely,

the opinion of Dr. E. Nakhuda, who completed Form SSA-4734-BK, *Physical Residual*

*Functional Capacity Assessment*.  R. at 18.  Dr. Nakhuda's assessment is Exhibit 7F in the

administrative record.  The following colloquy occurred between the ALJ and the VE (with

interjections from Mr. Cobb's representative) at the hearing.

> Q: All right.  I will give you a series of hypothetical[s] for each one for the claimant's age, education, and work experience. Hypothetical number one, pull up 7F.  In addition to the locations in 7F put that he needs a cane to walk.  In those limitations, can he do his previous work?
>
> A: No, he can't.
>
> Q: Okay.  Are there any jobs in the national or regional economy he could do?
>
> A: Well, I am a little, it's essentially light work, but would need a cane to ambulate.
>
> Q: Well, let me do, put another – – Okay, 7F sit-stand option at will.  He needs a cane to ambulate and all other limitations.  He can't do his previous work because they all a[re] medium or above.
>
> A: Right.  So we are saying light work with a sit-stand option.
>
> Q: And a cane to walk.
>
> A: And a cane to walk.
>
> Q: And the other postural limitations listed.  Never climbing ladders, ropes, and scaffolds.  Never kneeling.

A:      Okay.

ATTY:  Your Honor, I am sorry.  I must be looking at the wrong Exhibit.  My 7F shows standing and walking two hours out of eight.  Am I looking at the wrong Exhibit?  We said essentially light work.

ALJ:   Actually, you're absolutely right.  That's what it says.  Standing or walking at least two hours in an eight-hour day.

A:      Standing and walking two hours.

ALJ:   But, I think with a sit-stand option that takes that into account.

ATTY:  Well, I just wouldn't call that essentially light work.

Q:      Okay, well.  What I am asking you is to – – At this stage, with those qualifications, put it at light at this stage, 7F at light with a sit-stand option.  All right?

A:      Okay.  Examples would be a cashier.

Q:      Okay.

A:      And locally there are 3,000.  Nationally over 200,000.  Another example would be a packer and there are 1500 locally, 150,000 nationally.  Another example would be an inspector and there are 1,000 locally and over 100,000 nationally.

R. at 50-52.

In the June 13, 2011 decision the ALJ wrote, "I am taking into account Dr. Nakhuda's limitation of walking/standing 2 hours a day by limiting the claimant's RFC to sitting/standing at will, and I also note the jobs the vocational expert testified to, e.g., cashier and inspector,[5] *do not require a push/pull option involving the left leg*."  R. at 18 (emphasis added).  Not once in the

---

[5]  The Court notes that the VE identified **three** jobs a hypothetical individual could perform despite identified limitations.  Interestingly, the ALJ did not mention the occupation of **packer**.  Since the VE did not identify these occupations by DOT number, the Court cannot determine if the **packer** position requires a push/pull option involving the left leg.  Further, the Court notes, without an explanation in the decision, the ALJ **omitted** the **packer** position as a job Mr. Cobb could perform.  *See* R. at 19.

hypothetical posed to the VE did the ALJ specifically incorporate a limitation <u>excluding push/pull option involving the left leg</u>.  Moreover, in determining Mr. Cobb's RFC, the ALJ <u>omitted any reference</u> to any restrictions of pushing and/or pulling involving the lower extremities.

> After careful consideration of the entire record, I find[] that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant needs a sit/stand option at will, needs a cane to walk, he can never kneel or climb ladders[,] ropes or scaffolds and he must avoid hazards like machinery or heights.

R. at 16.

In assessing Mr. Cobb's Physical RFC, Dr. Nakhuda opined Mr. Cobb has an exertional limitation with regard to pushing or pulling (including operation of hand and/or foot controls) because Mr. Cobb is limited in the lower extremities.  R. at 386.  If a medical source finds a claimant has a limitation in the lower extremities, Form SSA-4734-BK asks for a description of the nature and the degree of the limitation.  Dr. Nakhuda did not provide the requested information.

On another page of Form SSA-4734-BK, Dr. Nakhuda identified the credibility and severity of Mr. Cobb's symptoms, noting in pertinent part,

> Problems with squatting, bending, standing, walking, sitting, kneeling, stair climbing, concentration.  Uses crutches, walker, cane or braces.  Trouble climbing up and down the stairs.  Fell out of the tub.  In conjunction with the MER,[6] the adls[7] are felt to be credible.

R. at 390.

---

[6] Medical Evidence of Record.

[7] Activities of daily living.

The ALJ assigned significant weight to Dr. Nakhuda's opinion that Mr. Cobb retains the RFC to perform light work. This exertional level is defined as follows,

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b) (2011).

Dr. Rafael Perez-Mera, who conducted a consultative examination on July 9, 2010, did not express an opinion about the maximum weight Mr. Cobb can lift and/or carry. From his examination Dr. Perez-Mera determined Mr. Cobb is unable to stand on his left leg alone, is unable to stand on the heels and toes with his left leg, is unable to squat or kneel, and must use a cane to walk. R. at 384. Dr. Nakhuda also opined that "medically required hand-held assistive device is necessary for ambulation[.]" R. at 386.

Under the Social Security Regulations a cane is considered a hand-held assistive device. "The requirement to use a hand-held assistive device may also impact on the individual's functional capacity by virtue of the fact that one or both upper extremities are not available for such activities as lifting, carrying, pushing and pulling." 20 C.F.R. Pt. 404, Subpart P, App. 1, § 1.00(J)(4) (2011). Not only is the ALJ's RFC determination *silent* on any restrictions to pushing and/or pulling with the lower extremities, the ALJ's RFC determination is also *silent* regarding what impact, if any, exists on Mr. Cobb's functional capacity to lift and/or carry due to the unavailability of one of Mr. Cobb's upper extremities (handling the cane).

B.      *Obesity*

The ALJ failed to consider Mr. Cobb's obesity.  The record clearly establishes Mr. Cobb, using his height and weight to calculate his Body Mass Index or BMI, is obese.  For instance, during a physical examination on January 20, 2010, a doctor noted "ABDOMEN: obese[.]"  R. at 357.  An identical finding was made during a physical examination on March 16, 2010.  R. at 333.  And a progress note from April 21, 2011, under assessment, recorded "obese BMI 33."  R. at 415.

At the May 25, 2011 hearing the ALJ inquired, "Current height and weight?" and Mr. Cobb responded, "Six feet, 243."  R. at 33.  Utilizing the *National Heart Lung and Blood Institute's* BMI Calculator located at http://www.nhlbisupport.com/bmi/, Mr. Cobb's BMI is 33. A BMI of 30 or greater constitutes obesity.

Obesity has been deleted as a listing from the Listing of Impairments.  However the Social Security Administration "made some changes to the listings to ensure that obesity is still addressed in our listings.  In the final rule, we added paragraphs to the prefaces of the musculoskeletal, respiratory, and cardiovascular body system listings that provide guidance about the potential effects obesity has in causing or contributing to impairments in those body systems." *Social Security Ruling (SSR)* 02-01p,[8] 2000 WL 628049 at *1 (Sept. 12, 2002).

The ALJ found Mr. Cobb has a musculoskeletal impairment and evaluated Mr. Cobb's impairment in light of Listing 1.08.  The paragraph added to the musculoskeletal system regulations regarding obesity states,

> Obesity is a medically determinable impairment that is often
> associated with disturbance of the musculoskeletal system, and
> disturbance of this system can be a major cause of disability in
> individuals with obesity.  The combined effects of obesity with
> musculoskeletal impairments can be greater than the effects of

---

[8]  Titles II and XVI:  Evaluation of Obesity.

each of the impairments considered separately.  Therefore, when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity.

20 C.F.R. Pt. 404, Subpart P, App. 1, § 1.00(Q) (2011).

The Court calculates Plaintiff's BMI for all dates from the administrative record utilizing the *National Heart Lung and Blood Institute's* BMI Calculator, with a height of six feet or 72 inches.

| Record Page(s) | Date | Weight | BMI |
|---|---|---|---|
| 312 | Sometime between 6/29/09 – 1/8/10 | 245 | 33.2 |
| 127 | undated | 225 | 30.5 |
| 222, 231, 238, 244, 256, 260 | 10/21/09 | 234 | 31.7 |
| 208, 211 | 12/9/09 | 242.2 | 32.8 |
| 208 | 12/23/09 | 245 | 33.2 |
| 356, 360 | 1/20/10 | 246 | 33.4 |
| 368 | 1/20/10 | 250.3 | 33.9 |
| 333 | 3/16/10 | 250.4 | 34.0 |
| 383 | 7/9/10 | 242 | 32.8 |
| 409, 411, 429 | 8/30/10 | 240 | 32.5 |
| 429 | 1/14/11 | 250.9 | 34.0 |
| 402 | 4/4/11 | 243 | 33.0 |

The Social Security Administration recognizes three levels of obesity in adults:  (a) Level I are individuals with a BMI of 30.0 – 34.9, (b) Level II are individuals with a BMI of 35.0 – 39.9, and (c) Level III, "extreme" obesity, are individuals with a BMI equal to or greater than 40.0.  *See SSR 02-01p*, 2000 WL 628049 at *2.  Based on the above data, Mr. Cobb's obesity qualifies as Level I.

The three levels of obesity do not correspond with a specific degree of functional loss.

> There is no specific level of weight or BMI that equates with a "severe" or a "not severe" impairment.  Neither do descriptive terms for levels of obesity (e.g., "severe," "extreme," or "morbid" obesity) establish whether obesity is or is not a "severe" impairment for disability program purposes.  Rather, we will do an *individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe*.

*SSR 02-01p*, 2000 WL 628049 at \*4 (emphasis added).  The ALJ failed to consider whether Mr. Cobb's obesity is a medically determinable impairment, and further, whether it is a severe impairment at step two of the sequential evaluation process.  The ALJ provided no explanation for his non-consideration of Mr. Cobb's obesity despite evidence in the administrative record.

**5.      Conclusion**

Substantial evidence does not support the decision that Mr. Cobb is not disabled. Accordingly, this case shall be remanded to the Commissioner.

Date: <u>March 12, 2013</u>                      _____/s/_____

                                                               WILLIAM CONNELLY
                                                               UNITED STATES MAGISTRATE JUDGE